J-S14002-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.L.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.E.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1639 MDA 2025 |

Appeal from the Decree Entered October 31, 2025
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
89233

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JULY 28, 2026**

M.E.M. (Mother) appeals from the decree entered by the Berks County Court of Common Pleas, which involuntarily terminated her parental rights to her now over two-year-old son, B.L.B. (the Child), pursuant to the Adoption Act.[1]  ***See*** 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).  We affirm.

We discern the following factual and procedural history from the orphans' court's opinion.  On March 10, 2024, the Berks County Children and Youth Services (the Agency) received a report that Mother and the Child arrived at the hospital after Mother gave birth to the Child on a cement floor in Paternal Grandparents' home.  The Child was admitted to the neonatal intensive care unit due to respiratory distress.  His umbilical cord tested positive for fentanyl, amphetamines, cocaine, gabapentin, and xylazine.  The

---

[1] The orphans' court also involuntarily terminated the parental rights of M.B. (Father), who did not appeal.

Child experienced withdrawal symptoms and was in the hospital for twelve days. Mother and Father admitted to extensive substance abuse.

On March 21, 2024 before the Child was released from the hospital, the Agency learned that Mother and Father were incarcerated on criminal charges. On March 22, the Agency filed for emergency custody of the Child, which the court granted. On March 27, the Child was adjudicated dependent. The Child was first placed in a kinship home and later moved to a foster home in October 2024, where he has remained ever since.

Mother was court ordered to participate in and complete the following services: parenting education, a mental health evaluation and any recommended services, a drug and alcohol evaluation and any recommended services, random urinalysis, casework services through the Agency and any recommended services, establishing and maintaining stable and appropriate housing and income, keeping the Agency informed of any changes in residence or income, signing releases of information, and attending supervised visitation.

Throughout the life of the case, Mother struggled to make progress on her goals. As noted, she was incarcerated when the Child was adjudicated dependent, and she was released in June 2024. At the August 27, 2024 permanency review hearing, Mother was found to be moderately compliant with the permanency plan and to have made minimal progress toward alleviating the circumstances which necessitated the Child's placement.

In December 2024, Mother reported to the adult probation office and admitted to relapsing. Mother was taken to the hospital. Upon discharge, she was supposed to report to a treatment facility, but she failed to report. A warrant was then issued for her arrest at the beginning of January 2025.

By the January 14, 2025 permanency review hearing, Mother was still on the run, and her whereabouts were unknown. She was found to be minimally compliant with the permanency plan and had made no progress.

Mother was apprehended and arrested on February 19, 2025, but the Agency did not learn she was incarcerated until March 7. Thus, from at least December 30, 2024 to March 7, 2025, Mother had no contact with the Agency.

On May 20, 2025, the Agency filed petitions to terminate Mother's and Father's parental rights. At that time, Mother was still incarcerated. At the June 10 permanency review hearing, Mother was found to be minimally compliant and had made no progress. Mother was released from prison on July 15.

The court held a termination hearing on August 18, September 25, and October 17, 2025. At the hearing, the Child was represented by his guardian *ad litem* (GAL) from the dependency proceedings.[2] The Agency presented the

_____

[2] Our Supreme Court has mandated that appellate courts *sua sponte* "verify that the orphans' court indicated that the attorney [in a dual role of GAL and legal counsel] could represent the child's best interests and legal interests without conflict." **In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020); **see also** 23 Pa.C.S.A. § 2313(a). Counsel representing a child's legal interests must advocate for the child's preferred outcome even if counsel does
*(Footnote Continued Next Page)*

testimony of an expert in clinical social work and mental health evaluations, a caseworker from Signature Family Services, a probation officer, and two Agency caseworkers. Mother and Father testified, and Mother presented the testimony of a substance abuse counselor.

On October 31, the orphans' court terminated Mother's and Father's parental rights. Mother timely appealed.

Before we address the merits of Mother's appeal, we note that her counsel has filed a petition to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).[3] To withdraw pursuant to *Anders*, counsel must:

_____

not agree with it, whereas the GAL representing a child's best interests must express what the GAL "believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees." *In re T.S.*, 192 A.3d 1080, 1082 n.2 (Pa. 2018) (citation omitted).

In the orphans' court's order appointing the Child's GAL as his legal counsel for the termination proceeding, the court stated that there was no apparent conflict as the Child was born in 2024. The court reaffirmed this finding in its opinion. *See* O.C.O. at 20. At the termination hearing, the GAL stated that there was no conflict between the Child's best and legal interests due to his age. N.T., 10/17/25, at 266. The Child was approximately one-and-a-half-years old during the termination proceedings. *See T.S.*, 192 A.3d at 1088 (recognizing that "where a child is too young to express a preference, it would be appropriate for the GAL to represent the child's best and legal interests simultaneously" (citations omitted)). Given the orphans' court's finding and the Child's age, we determine that the orphans' court fulfilled the mandate of *K.M.G.* and Section 2313(a).

[3] This Court extended the *Anders* principles to appeals involving the termination of parental rights. *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted).

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the **Anders** brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.
>
> With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

**In re J.D.H.**, 171 A.3d 903, 907 (Pa. Super. 2017) (citations and brackets omitted).

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in **Santiago**:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**In re Adoption of M.C.F.**, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted).

Preliminarily, we find that counsel has substantially complied with the technical requirements to withdraw.[4] **See Commonwealth v. Reid**, 117 A.3d 777, 781 (Pa. Super. 2015) (citation omitted) (observing that substantial compliance with the **Anders** requirements is sufficient).

In addition to verifying that counsel substantially complied with **Anders** and **Santiago**, this Court must "conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." **Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). Traditionally, we start by reviewing "'the case' as presented in the entire record with consideration first of issues raised by counsel." **See id.** (citing **Anders**, 386 U.S. at 744).

The four issues counsel presented in the **Anders** brief that arguably support Mother's appeal are as follows:

> 1. Did the Trial Court err by terminating Mother's parental rights based on the grounds for involuntary termination set forth in Pennsylvania Adoption Act, 23 Pa.C.S.A. §2511(a)(1) because the Agency failed to establish by

---

[4] We acknowledge that Mother sent this Court a letter from prison on May 7, 2026, in response to counsel's petition to withdraw and **Anders** brief. Mother asked this Court to "instruct" her "on what the next appropriate steps" were as she wished to present her own case to this Court. However, it is not this Court's role to act as counsel and advise Mother on how to proceed in her case. After orders from this Court, Mother's counsel's letters appropriately advised Mother that she had the right to seek private counsel, proceed *pro se*, and raise any additional points that she deemed worthy of this Court's attention. Thus, Mother was appropriately advised of her rights and next steps in this case.

clear and convincing evidence at the hearing that Mother showed a settled purpose, refused, or failed to perform parental duties?

2. Did the Trial Court err by terminating Mother's parental rights based on the grounds for involuntary termination set forth in 23 Pa.C.S.A. §2511(a)(2) by failing to consider Mother's presentation of evidence that she had continued to take steps to remedy the circumstances and conditions of incapacity or neglect leading to her Child's placement?

3. Did the Trial Court err by terminating Mother's parental rights based on the grounds for involuntary termination set forth in 23 Pa.C.S.A. §2511(a)(5) in finding that the Agency showed by clear and convincing evidence that it made "reasonable efforts" to provide Mother with services when it limited visitation with the Child, and failed to consider or credit Mother's efforts to follow the mental health recommendation by her continuing mental health treatment during her incarceration?

4. Did the Trial Court err by terminating Mother's parental rights based on the grounds for involuntary termination set forth in 23 Pa.C.S.A. §2511(a)(8), by finding Mother had not made substantial strides with services when Mother presented evidence showing cooperation in participating in services, made a decision for Child's change of placement in the best interest of the Child, continued to remain in contact with the Agency regarding her Child's life progress, obtained housing and employment, and given the opportunity, could remedy the conditions for placement within a reasonable period of time?

*Anders* Brief at 7-9 (suggested answers omitted) (cleaned up; many stylistic and naming convention changes made).

We review these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are

supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports that trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267. Furthermore, the "trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in

the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting ***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

***In re C.M.K.***, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); ***see also Interest of M.E.***, 283 A.3d 820, 830 (Pa. Super. 2022).

Instantly, the orphans' court terminated Mother's rights under Section 2511(a)(1), (2), (5), (8), and (b). As we may affirm under any ground under Section 2511(a), we review the court's decision as to Section 2511(a)(2). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

[. . .]

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Moreover, grounds for termination under Section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citation omitted). On this point, we emphasize that parents "are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *Id*. (citation omitted).

Here, the orphans' court determined that the Agency had proven the statutory grounds for termination under Section 2511(a)(2). In its opinion, the court opined on Mother's compliance with court-ordered services. *See generally* Orphans' Court's Opinion (O.C.O.), 10/30/25, at 6-13. The court noted, among other things, that Mother had resided at numerous addresses throughout the case, her whereabouts were sometimes unknown, and she had

periods of incarceration. *Id.* at 6-7. At the termination hearing, Mother was in the process of obtaining employment, but the court was concerned that she faced several barriers to her stated employment opportunity. *Id.* at 7. The court found that Mother had not established stable housing or employment. *Id.*

Additionally, Mother gave conflicting testimony regarding her period of sobriety. *Id.* at 8. Mother initially stated that she was sober for at least ten months, but the court later learned that her actual period of sobriety was at least two months shorter. *Id.* Mother confirmed that the last time she used drugs was in January 2025. *Id.* Mother was unsuccessfully discharged from casework services, nurturing parenting classes, and supervised visitation due to noncompliance. *See id.* at 9, 11, 13.

On appeal, Mother argues that she has shown effort and consistency in making progress with services to remediate the issues that caused the Child to come into care. *Anders* Brief at 24. Mother asserts that she never stopped attempting to complete the required services. *See id.* She worked on drug and alcohol counseling while incarcerated, kept in touch with the caseworkers, and checked on the Child. *Id.* Upon her release from prison, she immediately set out to complete the ordered services. *Id.* at 33. Up to the last day of the termination hearing, Mother continued to meet her responsibilities by obtaining a residence and potential employment and participating in casework sessions and assessments. *See id.* at 36-37. Mother asserts that the Agency failed to make "reasonable efforts" to provide her with services. *Id.* at 37.

Mother argues that if she was given additional time to complete services, she could successfully reunify with the Child. *Id.* at 24.

Essentially, Mother appears to assert that she made some progress throughout the case, and, thus, termination was improper. This argument fails to appreciate the standard of review we must apply in termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M., supra*.

Here, the record supports the orphans' court's findings. In the approximately one-and-a-half years between the Child's removal and the termination hearing, Mother did not or could not remediate the incapacity, abuse, neglect, or refusal that caused the Child to be without essential parental care, control, or subsistence. Mother admitted at the termination hearing that although she wanted to raise the Child, she could not do so at that time. *See* N.T., 10/17/25, at 228-29. Regarding sobriety, Mother testified that she thought she last used drugs in January 2025, which was approximately ten months after the Child was removed. *See id.* at 225.

For housing, Mother testified that she was living in a room she rented but acknowledged that the location was "absolutely not" appropriate to reunify with the Child. *Id.* at 226-28. One of the caseworkers testified that Mother lived in a multitude of places throughout the case including in a tent, a storage unit, with clients that she was providing home care to, and treatment centers or halfway houses. *See* N.T., 9/25/25, at 125-26, 129. The caseworker confirmed that Mother never obtained stable or permanent housing

throughout the case. *Id.* at 126, 130, 152. Mother was also on the run and her whereabouts were unknown to the Agency from December 2024 to March 2025, when the Agency learned that Mother had been incarcerated in February 2025. *See id.* at 128, 155.

For employment, although Mother testified at the hearing that she was employed, she had not actually started working. She stated that she had a "very good possibility for a future position" at a company, but she needed to speak with her parole officer, the company was not located where she was living at that time, and she did not have a start date. *See* N.T., 10/17/25, at 214, 227. She admitted that her employment was "too questionable right now" for reunification. *See id.* at 229. She stated that reunifying with the Child could take four or five weeks or four or five months. *See id.* The caseworker confirmed that although Mother had periods of employment, her periods of incarceration served as a barrier to stable employment. *See* N.T., 9/25/25, at 131.

Regarding other services, Mother admitted that she did not complete parenting education. *See id.* at 180. She was unsuccessfully discharged from nurturing parenting and casework services. *See* N.T., 8/18/25, at 41, 56. Mother did not comply with sufficient mental health treatment to relieve the Agency's concerns with her mental health. *See* N.T., 9/25/25, at 134, 153, 157.

Thus, the record supports the orphans' court's decision. Mother's repeated and continued incapacity, abuse, neglect, or refusal caused the Child

to be without essential parental care, control, or subsistence. There was no true indication that Mother could or would remedy the conditions which led to the Child's placement, outside of her own testimony. We discern no error of law or abuse of discretion in the court's decision under Section 2511(a)(2).

We turn next to Section 2511(b), the second part of the bifurcated analysis in termination of parental rights cases.[5] Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," but

---

[5] We note that Mother's counsel did not raise an issue challenging termination under Section 2511(b) in the Appellate Rule 1925(b) concise statement or the statement of questions involved in the **Anders** brief. Thus, we would typically find this issue waived. **See** Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 2116(a); **In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017). However, we note our obligation in **Anders** cases requires us to conduct a simple review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel. **See Dempster**, 187 A.3d at 272. Moreover, although Mother's counsel did not appropriately raise an issue related to Section 2511(b), counsel provided arguments in the **Anders** brief that could potentially be construed to apply to subsection (b), and the orphans' court analyzed (b). Thus, we decline to find this issue waived. **Cf. Interest of J.M.**, 219 A.3d 645, 650 n.3 (Pa. Super. 2019) (noting this Court declined to view counsel's statement made in response to an order to show cause as a concession on the mother's behalf where counsel was seeking to withdraw under **Anders**).

"courts should consider the matter from the child's perspective, placing [the child's] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citations omitted); *see also C.M.K.*, 203 A.3d at 261-62 (the focus of Section 2511(a) is the conduct of the parent, whereas the focus of Section 2511(b) is the best interests of the child (citation omitted)).

"The plain language of Section 2511(b) clearly mandates that, in assessing the petition to terminate parental rights, the 'primary consideration' must be the child's 'developmental, physical and emotional needs and welfare.'" *K.T.*, 296 A.3d at 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." *Id.* at 1106 (citing *T.S.M.*, 71 A.3d at 267). Our Supreme Court also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. *Id.* (citing *T.S.M.*, 71 A.3d at 268; *In re D.C.D.*, 105 A.3d 662, 677 (Pa. 2014)).

Here, the orphans' court concluded that terminating Mother's parental rights was in the Child's best interest. The court explained that Mother had a bond with the Child, but the bond was minimal and there was no evidence

that severing that bond would be detrimental.[6]  **See** O.C.O. at 20-21.

However, the court also opined that due to the Child's young age, he likely did

not recognize Mother as his primary caregiver.  **Id.** at 20.  The court believed

that Mother was not in an appropriate position to take care of the Child.  **Id.**

at 20.  The court noted that the Child had developed a bond with the foster

family and looked to them to meet his needs.  **Id.**

On appeal, Mother argues that termination was not in the Child's best

interest.  **Anders** Brief at 40.  Mother claims the Child could experience

"inclusivity with his family," *i.e.*, Mother's other children, if termination was

denied.[7]  **See id.**  Mother believes she should be given more time to fulfill her

parental duties, and she is willing to be the Child's mother.  **See id.**

Mother again fails to appreciate our standard of review.  We must accept

the orphans' court's factual findings and credibility determinations if they are

supported by the record.  **See T.S.M., supra**.

---

[6] We observe that the orphans' court contradicted itself in its decree and opinion.  The court stated in its termination decree that the Child did not have a bond with Mother, which it repeated in its opinion, but it also stated in its opinion that the Child had a bond with Mother.  This does not impact our analysis because, even if we assume the Child had a bond with Mother, her appeal still fails.

[7] Mother has three other children, ages four, seven, and fifteen.  Mother does not have custody of any of these children; they are all in the custody of their respective fathers.  Mother does not have any contact with her oldest child, but she has contact with her two younger children, who share the same father.

Here, the record supports the orphans' court's findings. As of the termination hearing, the last time Mother had seen the Child was December 2024, before she went on the run and was incarcerated and her visits were suspended. *See* N.T., 9/25/25, at 141-44. Even when Mother was able to have visits, her attendance was inconsistent. *See* Agency's Exhibit 9, at 9.

The Agency caseworker testified that the Child had been with the same foster family since October 2024. N.T., 9/25/25, at 145. The Child felt comfortable in the foster home, sought comfort from the foster mother, and exhibited a natural bond with the foster family. *Id.* While testifying at the termination hearing, Mother admitted that the Child had a stronger bond with the foster family than with her. N.T., 10/17/25, at 229. The caseworker testified that she had no concerns with the foster family, who was able to meet the Child's daily physical and emotional needs. *See* N.T., 9/25/25, at 145-46. The caseworker believed that there would be no detriment to the Child from termination. *See id.* at 147. Mother's challenge to Section 2511(b) merits no relief.

Finally, after conducting our independent review, we discern no additional, non-frivolous issues overlooked by counsel. *See Dempster*, 187 A.3d at 272.

In sum, we agree with counsel's assessment that Mother's issues on appeal are frivolous, and we discern no error of law or abuse of discretion in

the orphans' court's decision to terminate Mother's parental rights under Section 2511(a)(2) and (b) of the Adoption Act.

Decree affirmed. Petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>7/28/2026</u>